Filed 12/16/24  P. v. Patterson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B336115 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA506278) |
| v. | |
| MICHAEL A. PATTERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed as modified, remanded with directions.

Natalie Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Appellant Michael A. Patterson appeals from a judgment of conviction for two counts of injuring a spouse, cohabitant, child's parent, and/or person with whom he had a dating relationship with a prior conviction, and one count of vandalism under $400 in damage.

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), Patterson's appellate counsel requested that we review the record and determine whether any arguable issues exist on appeal. We have reviewed the entire record and find no arguable issues, other than an error in the amount of presentence conduct credit awarded. We modify the amount of presentence conduct credit, remand the matter with directions to prepare a new abstract, and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Prosecution Case*

##### 1. June 4, 2022 incident

Patterson and Jannel L. were in a dating relationship that began in 2019 and ended in April of 2021. He is the father of Jannel L.'s daughter who was born in October of 2020. Toward the end of the relationship, Patterson was violent toward Jannel L. Based on these acts of domestic violence, she sought a restraining order against him.

After 11:00 p.m. on June 4, 2022, Jannel L. drove to buy cigarettes at a store on Slauson and Figueroa in Los Angeles. She was driving her white Kia Forte. Jannel L. left the windows open on the driver's and passenger's sides when she exited her car to go into the store.

After exiting the store, Jannel L. heard someone calling her name and saw that it was Patterson. She entered her car and

began driving out of the parking lot. Patterson jumped into Jannel L.'s car through the front driver's side window.

Patterson demanded the car from Jannel L. He threatened to harm her. He said he would kill Jannel L. and would also kill himself. Patterson said he did not care about Jannel L. or her children, or the restraining order she was intending to obtain against him.

While Jannel L. was driving, Patterson strangled her, hit her body, and ripped hair out of her head. Jannel L. hit Patterson as he was attacking her. She began to lose consciousness and stopped her car on Gage Avenue and Haas Street. Patterson stopped strangling her and took the car key. When Jannel L. tried to get the key back, Patterson stabbed her hand with it and cut her finger. He got out of the car from the passenger's side and fled with the key.

Jannel L. called 911. She stopped following Patterson because she was tired and felt like she could not chase after him any longer. She was also scared Patterson would do something else to her. Jannel L. returned to her car and found her key bent and jammed into the ignition. She was eventually able to start the car and returned home.

At 11:15 p.m., Los Angeles Police Department Officer Elvis Whitelow responded to a call for service and spoke with Jannel L. Officer Whitelow and his partner Officer Petterway observed injuries to Jannel L.'s neck and right hand, which they photographed. She had difficulty breathing and swallowing.

### 2. June 14, 2022 incident

On the night of June 14, 2022, Jannel L. was driving her car with Raymond McClure, who was her boyfriend at the time.

3

They were driving to Jannel L.'s house on 6th Avenue and 59th Street, which she moved into on April 22, 2022.

When they arrived, Jannel L. saw the light on in her bedroom. She did not normally leave on that light. Jannel L. saw Patterson in the house. Jannel L. had no reason to believe that Patterson knew she was living there. She had never told him where she was living. Prior to June 14, 2022, Jannel L. had never seen Patterson on her property.

After Patterson emerged from Jannel L.'s bedroom, they started arguing. Patterson told Jannel L., "I'ma kill you for fucking with me." Patterson got on top of her and strangled her in a headlock.

Jannel L. was able to get away and ran out of the back of the house. McClure had backed out the car. Jannel L. ran down 59th Street toward 7th Avenue. While running away, she heard glass breaking.

Jannel L. called McClure to find out where he was. McClure drove Jannel L.'s car to the liquor store where he met her. The front window was smashed. McClure told her that Patterson broke the window. Jannel L. called 911. Her phone died and she was unable to complete her call. After charging it in her car, she called 911 again.

At 12:45 a.m., Los Angeles Police Department Officer Javier Heras and his partner Officer Lewis responded to a call for service at Jannel L.'s house on 6th Avenue and 59th Street. After receiving no response to their knock on the front door, Officer Heras and Officer Lewis checked the exterior and side of the house. Officer Heras saw pieces of broken brick in the middle of the street.

Officer Heras and Officer Lewis left the location and received another service call related to the same address and person that originally called. The second call was to the intersection of Slauson and 6th Avenue. When the officers arrived, they met with Jannel L., who was in the car with McClure. Officer Heras saw that the windshield was shattered. He also observed that Jannel L.'s voice appeared to be very weak, soft, and low. He also observed that she repeatedly touched her throat and was occasionally coughing.

After speaking with Jannel L., Officer Heras returned to her house to conduct a protective sweep to ensure no one was inside. After they arrived, another officer informed Officer Heras that one of the window blinds was moving, which indicated that someone was inside. The officers set up a perimeter.

Officer Heras saw Patterson exit the rear door. He ordered Patterson to show his hands. Patterson went to the small rear yard attached to the property. The officers lost sight of him. Officer Edwin Villalpando saw Patterson ducking behind a car. He commanded Patterson to show his hands and face away from him. Patterson complied. The officers took him into custody on 6th Avenue.

Officer Heras later inspected Jannel L.'s house and saw that entry was made through the side window.

### 3. June 24, 2017 incident involving Marshetta T.

Marshetta T. dated Patterson from November or December of 2016 to March or April of 2017 when she ended the relationship. In the early evening of June 23, 2017, Marshetta T. saw Patterson at her apartment. At the time, she was living on East Pacific Coast Highway in Long Beach. Patterson wanted to

get back together with her.  She did not want to get back together.  She asked Patterson to leave.  They argued and he left.

In the early morning of June 24, 2017, Patterson broke into Marshetta T.'s house.  She woke up to Patterson standing over her whispering her name.  Patterson refused to leave and they argued for hours.  Eventually, Patterson called his mother who told him to leave.  He followed his mother's direction and left.

Patterson returned later in the day.  Marshetta T. told him to leave.  Patterson pushed past her, took off his clothes, and got into her bed.  He told Marshetta T. to get into bed with him.  He stated, "We're going to work it out."  Marshetta T. told him to get out of her home.  She said something to Patterson that caused him to get out of the bed and get dressed.  Patterson called someone and told Marshetta T. that he would have his sister harm her.  Patterson also threatened to "sock" Marshetta T. in the face.

Marshetta T. tried to escort Patterson to the front door, but he resisted.  Patterson pushed her.  As Marshetta T. fell back, she grabbed a kitchen knife on the bar next to the kitchen.  Patterson grabbed her wrist and they struggled over the knife.  During the struggle, Patterson was cut by the knife.  Marshetta T. grabbed her phone from the counter and called 911.

Long Beach Police Department Officer Eric Robbins responded to the domestic violence call for service at Marshetta T.'s house.  When Officer Robbins arrived, another officer named Pruiet was already present and interacting with Patterson.  Patterson had a cut on his hand.  When Officer Robbins got out of his patrol car, Patterson ran away.  Officer Robbins chased after him, telling him, "Police.  Stop."  Patterson did not stop.  Officer Robbins caught up to him and tackled him from behind.  They

6

both fell to the ground.  Other officers assisted with handcuffing Patterson.

## II. Procedure

### A. *The Verdict*

The jury convicted Patterson of two counts of injuring a spouse, cohabitant, child's parent, and/or person with whom he had a dating a relationship (Pen. Code,[1] § 273.5, subd. (a); counts 1 & 3), and one count of vandalism under $400 in damage (§ 594, subd. (a); count 4).  The jury acquitted him of second degree robbery (§ 211; count 2).

Patterson waived his right to have the jury determine the prior conviction allegation for counts 1 and 3 under section 273.5, subdivision (f)(1) for his prior misdemeanor conviction for violating section 273.5, subdivision (a) in case No. 7LB03120 on August 24, 2017, in the Los Angeles Superior Court.  He admitted the truth of this allegation.

Patterson also waived his right to have the jury determine the allegations for a prior conviction under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and the aggravating circumstances for engaging in violent conduct that indicated a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)) and suffering a prior prison term (*id.*, rule 4.421(b)(3)).

The court found true the allegation that Patterson was previously convicted of attempted robbery in case No. GA087000.  The court also determined the truth of Patterson's prior convictions for grand theft person (§ 487, subd. (c)) in case No. SA081513 and second degree burglary (§ 459) in case

---

[1]	All further undesignated statutory references are to the Penal Code.

7

No. 13CF0633 for purposes of the aggravating circumstance that he served a prior prison term. The court also found true that Patterson engaged in violent conduct in committing the offenses indicating a serious danger to society under California Rules of Court, rule 4.421(b)(3).

### B. *The Sentence*

The court imposed 10 years for count 1, calculated as the upper term doubled pursuant to the Three Strikes law. The court imposed a consecutive one year four months for count 3, calculated as one-third of the middle term. The court struck the punishment under the Three Strikes law for count 3 only. The court imposed a concurrent term of 364 days for count 4. The total aggregate term was 11 years four months in state prison. The court also ordered Patterson to pay $3,418 to the victim's compensation claim board.

The court awarded presentence custody credit of 509 days and presentence conduct credit of 509 days for a total of 1,018 days.

## DISCUSSION

## I. Independent Review Pursuant to *People v. Wende*

We appointed counsel to represent Patterson on appeal. Counsel filed an opening brief that includes the facts and procedural history of the case and requests that we review the record and determine whether there are any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d at p. 441.) Counsel advised Patterson of the right to file a supplemental brief within 30 days from the date that she filed the opening brief. To date, Patterson has not filed a supplemental brief.

We have examined the entire record. Other than the incorrect award of presentence conduct credits, we are satisfied

8

that no arguable issues exist, and Patterson's counsel has fully satisfied her responsibilities under *Wende.* (*Smith v. Robbins* (2000) 528 U.S. 259, 279–284; *Wende, supra,* 25 Cal.3d at p. 441; *People v. Kelly* (2006) 40 Cal.4th 106, 123–124.)

## II. Presentence Conduct Credit

A defendant is entitled to actual custody credit[2] and conduct credit for work performed[3] and good behavior.[4] (§ 4019, subds. (b), (c); *People v. Brown* (2020) 52 Cal.App.5th 899, 902–903.) For every two days of actual custody, the defendant receives an additional day of conduct credit for work performed and an additional day for good behavior. (§ 4019, subd. (f); *People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1358.) "A defendant who serves an odd number of days is not entitled to an additional single day of conduct credit for his or her final day of actual custody." (*Whitaker,* at p. 1358.) Conduct credits will always be an even number.

Here, the trial court improperly awarded an extra day of conduct credit. Patterson was entitled to 508 days of conduct credit, not 509 days.

---

[2]     Section 2900.5, subdivision (a).

[3]     "[O]ne day shall be deducted from the prisoner's period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff . . . ." (§ 4019, subd. (b).)

[4]     "[O]ne day shall be deducted from the prisoner's period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff . . . ." (§ 4019, subd. (c).)

**DISPOSITION**

We modify the award of presentence conduct credit from 509 days to 508 days. We remand and direct the trial court to amend item No. 16 of the abstract of judgment by replacing 1,018 with 1,017 under Total Credits and by replacing 509 with 508 under Local Conduct. The trial court is to ensure that a certified copy of the amended abstract of judgment is sent to the Department of Corrections and Rehabilitation. In all other aspects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.*

We concur:

EDMON, P. J.

ADAMS, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10